**JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP**
Michael J. Saltz, Esq.  SBN 189751
msaltz@jrsfllp.com
Colby A. Petersen, Esq. SBN 274387
cpetersen@jrsfllp.com
G. Austin Sperry, Esq.  SBN 278535
asperry@jrsfllp.com
10866 Wilshire Boulevard, Suite 1550
Los Angeles, CA  90024
Telephone:  (310) 446-9900  Facsimile: (310) 446-9909

Attorneys for Defendant THE SCREENING PROS, LLC

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California  90024
Tel. 310.446.9900 • Fax 310.446.9909

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| GABRIEL FELIX MORAN,<br><br>                     Plaintiff,<br><br>          vs.<br><br>THE SCREENING PROS, LLC a California Corporation; and DOES 1-10 inclusive,<br><br>                     Defendants. | Case No.: 2:12-cv-05808-SVW-AGR<br><br>**DEFENDANT THE SCREENING PROS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO *FED. R. CIV. PROC.* 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**<br><br>Complaint filed:  February 2, 2012<br>First Amended<br>Complaint Filed: June 7, 2012<br>Removed:        July 5, 2012<br>Trial Date:      None<br><br>Hearing Date:   Sept. 10, 2012<br>Time:          1:30 p.m.<br>Courtroom.:     6 – 2nd Floor<br>Judge:         Hon. Stephen V. Wilson |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Sept. 10, 2012 At 1:30 PM or as soon as this matter may be heard in Courtroom 6 of the above-entitled court, Defendant The Screening Pros, LLC will and hereby does move the Court for an Order dismissing certain causes of action in the First Amended Complaint in this matter.

1    Specifically, Defendant will move this Court to dismiss the following causes of action:

2    The First Cause of Action for violation of 15 USC § 1681c for failure to state a claim, as

3    the information reported was timely under the statute;

4    The Second Cause of Action for violation of 15 USC § 1681e for failure to state a claim,

5    as there is no claim that the information reported was inaccurate and there is no violation of 15

6    USC § 1681c;

7    The Fourth Cause of Action for violation of *Civ. Code* § 1786.18 for failure to state a

8    claim, as the report at issue is not an Investigative Consumer Report, the Investigative Consumer

9    Reporting Agencies Act does not apply because it is unconstitutionally vague, and any

10    prohibition against the truthful reporting of public court records unconstitutionally violates the

11    First Amendment right to free speech;

12    The Fifth Cause of Action for violation of *Civ. Code* § 1786.20 for failure to state a

13    claim, as the report at issue is not an Investigative Consumer Report, the Investigative Consumer

14    Reporting Agencies Act does not apply because it is unconstitutionally vague, and any

15    prohibition against the truthful reporting of public court records unconstitutionally violates the

16    First Amendment right to free speech;

17    The Sixth Cause of Action for violation of *Civ. Code* § 1786.24 for failure to state a

18    claim, as the report at issue is not an Investigative Consumer Report, and the Investigative

19    Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague;

20    The Seventh Cause of Action for violation of *Civ. Code* § 1786.12(e) for failure to state a

21    claim, as the report at issue is not an Investigative Consumer Report, and the Investigative

22    Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague;

23    The Eighth Cause of Action for violation of *Civ. Code* § 1786.28 for failure to state a

24    claim, as the report at issue is not an Investigative Consumer Report, and the Investigative

25    Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague;

26    The Ninth Cause of Action for violation of *Civ. Code* § 1786.29 for failure to state a

27    claim, as the report at issue is not an Investigative Consumer Report, and the Investigative

28    Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague;

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

The Tenth Cause of Action for violation of *Bus. & Profs. Code* § 17200 et. seq. because Plaintiff lacks standing, there is an adequate remedy at law, and injunctive relief is preempted; and

The Eleventh Cause of Action for violation of *Bus. & Profs. Code* § 17200 et. seq. because Plaintiff lacks standing, there is an adequate remedy at law, and injunctive relief is preempted.

The motion will be made under *Fed. R. Civ. Proc.* 12(b)(6) and is based on the fact that Plaintiff has failed to state a proper claim for relief on the aforementioned causes of action.

The motion will be based on the memorandum of points and authorities, the records on file in this action, those matters of which this Court may and must take judicial notice, and any further evidence and argument that may be presented at the hearing on this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 7, 2012 and again on July 11, 2012.

Dated: July 16, 2012                    **Jacobson, Russell, Saltz & Fingerman LLP**


_____/S/_____
Michael J. Saltz, Esq.
Attorneys for Defendant The Screening Pros, LLC

**JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP**
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel: 310.446.9900 • Fax 310.446.9909

## MOTION TO DISMISS

Defendant The Screening Pros, LLC moves for an Order under FRCP 12(b)(6) dismissing certain causes of action in the operative First Amended Complaint.

Specifically, Defendant moves for dismissal of the following:

The First Cause of Action for violation of 15 USC § 1681c for failure to state a claim, as the information reported was timely under the statute;

The Second Cause of Action for violation of 15 USC § 1681e for failure to state a claim, as there is no claim that the information reported was inaccurate and there is no violation of 15 USC § 1681c;

The Fourth Cause of Action for violation of *Civ. Code* § 1786.18 for failure to state a claim, as the report at issue is not an Investigative Consumer Report, the Investigative Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague, and any prohibition against the truthful reporting of public court records unconstitutionally violates the First Amendment right to free speech;

The Fifth Cause of Action for violation of *Civ. Code* § 1786.20 for failure to state a claim, as the report at issue is not an Investigative Consumer Report, the Investigative Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague, and any prohibition against the truthful reporting of public court records unconstitutionally violates the First Amendment right to free speech;

The Sixth Cause of Action for violation of *Civ. Code* § 1786.24 for failure to state a claim, as the report at issue is not an Investigative Consumer Report, and the Investigative Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague;

The Seventh Cause of Action for violation of *Civ. Code* § 1786.12(e) for failure to state a claim, as the report at issue is not an Investigative Consumer Report, and the Investigative Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague;

The Eighth Cause of Action for violation of *Civ. Code* § 1786.28 for failure to state a claim, as the report at issue is not an Investigative Consumer Report, and the Investigative Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague;

The Ninth Cause of Action for violation of *Civ. Code* § 1786.29 for failure to state a claim, as the report at issue is not an Investigative Consumer Report, and the Investigative Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague;

The Tenth Cause of Action for violation of *Bus. & Profs. Code* § 17200 et. seq. because Plaintiff lacks standing, there is an adequate remedy at law, and injunctive relief is preempted; and

The Eleventh Cause of Action for violation of *Bus. & Profs. Code* § 17200 et. seq. because Plaintiff lacks standing, there is an adequate remedy at law, and injunctive relief is preempted.

The motion will be made under *Fed. R. Civ. Proc.* 12(b)(6) and is based on the fact that Plaintiff has failed to state a proper claim for relief on the aforementioned causes of action.

The motion will be based on the memorandum of points and authorities, the records on file in this action, those matters of which this Court may and must take judicial notice, and any further evidence and argument that may be presented at the hearing on this motion.

Dated: July 16, 2012            **Jacobson, Russell, Saltz & Fingerman LLP**


_____/S/_____
Michael J. Saltz, Esq.
Attorneys for Defendant The Screening Pros, LLC

**JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP**
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

# **TABLE OF CONTENTS**

1. INTRODUCTION ................................................................................................ 1

    A. THE UCL CLAIM ................................................................................ 3

    B. THE ICRAA CLAIMS ........................................................................ 3

    C. THE FCRA ......................................................................................... 5

2. PROCEDURAL HISTORY .............................................................................. 6

3. STANDARD OF REVIEW .............................................................................. 6

4. ARGUMENT ..................................................................................................... 7

    A. THE FIRST CAUSE OF ACTION FOR VIOLATION OF 15 USC § 1681c(a) FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED .......................................................................................... 7

    B. THE SECOND CAUSE OF ACTION FOR VIOLATION OF 15 USC § 1681e FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED ................................................................................. 8

    C. THE FOURTH CAUSE OF ACTION FOR VIOLATION OF CIV. CODE § 1786.18 FAILS TO STATE ANY CLAIM FOR WHICH RELIEF CAN BE GRANTED. ................................................................. 10

        1) THE HISTORY OF CCRAA AND ICRAA ........................................ 11

        2) THE SUBJECT REPORT ATTACHED TO THE ORIGINAL COMPLAINT IS NOT AN ICR AS A MATTER OF LAW. ................ 14

            a. The Mere Presence Of Public Criminal And Civil Court Records Does Not Make A Tenant Screening Report An ICR, Or Else ICRAA Becomes Unconstitutionally Vague As A Matter of Law ......................................................................... 15

        3) THE APPLICATOIN OF ICRAA AND CCRAA STATUTES TO RESTRICT THE REPORTING OF TRUTHFUL PUBLIC RECORD INFORMATION IS INHERENTLY UNCONSTITUTIONAL AND CANNOT BE THE BASIS OF A VIOLATION OF ICRAA OR AN AMENDED CCRAA CLAIM. ...... 18

    D. PLAINTIFF'S FIFTH THROUGH NINTH CAUSES OF ACTION FAIL TO STATE ANY CLAIM FOR WHICH RELIEF CAN BE GRANTED, AS ICRAA DOES NOT APPLY TO TSP'S TENANT SCREENING REPORTS CONTAINING PUBLIC COURT RECORDS CONTAINING CRIMINAL INFORMATION. .......................................................... 21

    E. THE FAC FAILS TO PROPERLY ALLEGE A CLAIM UNDER *BUS. & PROFS. CODE* § 17200 et. seq. ....................................................... 21

        1) PLAINTIFF HAS NO STANDING TO BRING A UCL CLAIM. ....... 21

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

2)    NO UCL CLAIM EXISTS WHEN CLAIMANTS HAVE AN ADEQUATE REMEDY AT LAW. ...................................................... 23

3)    PLAINTIFF'S UCL CLAIMS ARE PREEMPTED FOR FCRA VIOLATIONS. ........................................................................... 24

5.    CONCLUSION ................................................................................ 25

**JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP**
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

# TABLE OF AUTHORITIES

**Cases**

*Batdorf v. Trans Union* (N.D. Cal. May 8, 2000) 2002 U.S. Dist. LEXIS 9489 ...................... 9

*Bittick v. Experian Information Solutions, Inc.* (N.D. Tx. 2006) 419 F.Supp.2d 717 ............. 25

*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798 .................................. 22

*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223 .......................... 22

*Citizens of Humanity, LLC v. Costco Wholesale Corp.* (2009) 171 Cal.App.4th 1 ........... 22, 23

*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163 ................................ 23

*Forsythe v. Wells Fargo Bank, N.A.* (2012, CD Cal) 2012 US Dist LEXIS 44031 ................ 22

*Gauci v. Citi Mortgage* (C.D. Cal. Apr. 30, 2012)  2012 U.S. Dist. LEXIS 60153 ................ 9

*Goodman v. Praxair, Inc.* (4th Cir. 2007) 494 F.3d 458 ........................................................ 6

*Guimond v. Trans Union Credit Info. Co.* (9th Cir. Cal. 1995) 45 F.3d 1329 ......................... 9

*Hall v. Time Inc.* (2008) 158 Cal.App.4th 847 ................................................................... 22

*Hasbun v. County of L.A.* (9th Cir. Cal. 2003) 323 F.3d 801 ............................................... 8

*Heighly v. J.C. Penney Life Ins. Co.* (C.D. Cal. 2003) 257 F.Supp.2d 1241 ...................... 3, 23

*Hogan v. PMI Mortg. Ins. Co.*, (N.D. Cal. May 12, 2006) 2006 U.S. Dist. LEXIS 32179 ...... 25

*Howard v. Blue Ridge Bank* (N.D. Cal. 2005) 371 F.Supp. 2d 1139 ............................... 3, 25

*In re Tobacco II Cases* (2009) 46 Cal.4th 298 .................................................................. 22

*Jarrett v. Bank of America, et. al.* (D. Kan. 2006) 421 F. Supp.2d 1350 ............................ 25

*Kansa Reins. Co. v. Congressional Mortgage Corp.* (5th Cir. 1994) 20 F.3d 1362 ................. 6

*Medina v. Safe-Guard Products, Int'l., Inc.* (2008) 164 Cal.App.4th 105 .............................. 22

*National Association for the Advancement of Psychoanalysis v. California Board of Psychology* (9th Cir. 2000) 228 F.3d 1043 ................................................................... 6

*Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604 ........... 4, 5, 14, 15, 16, 17

*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583 ............................................. 22

*Poulson v. Trans Union, LLC* (E.D. Tx. 2005) 370 F.Supp.2d 592 ...................................... 25

*Provincial Horne Mortgage Co. v, Superior Court* (1998)  66 Cal.App.4th 1236 ................. 23

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California  90024
Tel. 310.446.9900 • Fax 310.446.9909

*Sorrell v. IMS Health Inc.* (2011) 131 S.Ct. 2653 ................................................. 5, 20

*Sprewell v. Golden State Warriors* (9th Cir. 2001) 266 F.3d 979 ............................ 6

*Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628 ........................... 4, 5, 15

*U.D. Registry v. State of California* (2006) 144 Cal.App.4th 405 ............................ 5, 6, 12, 19

*U.D. Registry, Inc. v. State of California* (1995) 34 Cal.App.4th 107 ............... 6, 12, 18, 19, 21

*Washington v. Credit Services, Inc.* (5th Cir. 2000) 199 F.3d 263 ......................... 24

## Statutes

15 USC § 1681a(d) ................................................................................................. 11

15 USC § 1681c(a) ................................................................................................. 7

15 USC § 1681e(b) ................................................................................................. 9

15 USC § 1681o ................................................................................................... 24

15 USC §1681c(a)(5) ........................................................................................... 7, 8

*Bus. & Prof. Code* § 17200 ................................................................................ 3, 22, 24

*Bus. & Prof. Code* § 17203 ................................................................................ 21

*Civ. Code* § 1785.1(d) ....................................................................................... 13

*Civ. Code* § 1785.11 .......................................................................................... 12

*Civ. Code* § 1785.11(a)(3)(E) ........................................................................... 13

*Civ. Code* § 1785.11.2 ...................................................................................... 19

*Civ. Code* § 1785.13 .......................................................................... 4, 10, 15, 17

*Civ. Code* § 1785.13(a)(3) ............................................................................ 12, 18

*Civ. Code* § 1785.13(a)(6) ............................................................................ 3, 18, 20

*Civ. Code* § 1785.3(a)(3) ................................................................................. 13

*Civ. Code* § 1785.3(c)(3) ................................................................................. 13

*Civ. Code* § 1786(a) ......................................................................................... 13

*Civ. Code* § 1786(f) .......................................................................................... 13

*Civ. Code* § 1786.12(d)(5) ............................................................................... 13

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

*Civ. Code* § 1786.18 ................................................................................ 4, 12, 15

*Civ. Code* § 1786.18(a)(7) ........................................................................ 10, 20

*Civ. Code* § 1786.2(b) ............................................................................... 12, 13

*Civ. Code* § 1786.2(c) ............................................................................... 11, 12, 14

*Civ. Code*, § 1785.3(c) .............................................................................. 11, 12, 14

*Civ. Code,* former § 1785.3(c) .................................................................. 4, 11, 14

*Civ. Code*, former § 1786.2(c) ................................................................... 4, 12, 14

*Penal Code* § 1203.4 ................................................................................ 1

Other Authorities

Legislative Counsel's Digest of Senate Bill 1406 (1981-1982 Reg. Sess.) as introduced on February 1, 1982 ................................................................................ 13

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. INTRODUCTION

Plaintiff Gabriel Felix Moran ("Plaintiff") has sued Defendant The Screening Pros, LLC ("TSP") for claims arising out of one tenant screening report issued by TSP containing truthful information about Plaintiff's criminal history and convictions, as obtained from publicly available court records ("Subject Report").

Specifically, Plaintiff alleges that "TSP is a background check company that routinely provide[sic] screening services to landlords in connection with the leasing of residential properties." [First Amended Complaint ("FAC") ¶ 5]. Plaintiff then claims that said screening reports, including the Subject Report, are issued for tenant screening purposes [See FAC ¶¶ 26, 27, 34 & 35], and that those reports contain information including public court records about criminal cases. [See FAC ¶¶ 36, 46, and Complaint Exb. "1"].

Plaintiff then alleges that on or about February 5, 2010, TSP furnished  the Subject Report in response to Plaintiff's application to seek housing at a development owned by Affirmed Housing Group named Maple Square. [See FAC ¶¶ 33, 34 & 35]. A copy of the Subject Report is attached to the Original Complaint as Exhibit "1" [Complaint Exb. "1"].[1]

According to the FAC, the Subject Report contained truthful information from public court records regarding Plaintiff's criminal history. [FAC ¶¶ 36, 39, 40, 46, 47 & 49; Complaint Exb. "1"], including  that on or about 5-16-00, Plaintiff was charged in Case Number 188935 for the  misdemeanor of being "under the influence of a controlled substance", and that charge was dismissed years later on 3-2-04 (presumably pursuant to *Penal Code* § 1203.4 after a guilty plea was entered and probation served). [See FAC ¶ 37; Complaint Exb. "1"].

The Subject Report also truthfully reported that on or about 6-4-06, Plaintiff was charged in Case Number 217842 with: Count 1,  Burglary in the 2nd degree; Count 2, Forgery; and Count

---

[1]  In Plaintiff's haste to file the FAC in response to TSP's dispositive Demurrer to the Original Complaint, Plaintiff forgot to attach a copy of the Subject Report that was attached to the Original Complaint as Exhibit "1", despite claiming that Plaintiff did attach said the Subject Report to the FAC therein. [See FAC ¶ 35].  Thus, reference is made herein to Exhibit "1" in the Original Complaint a copy of which is attached hereto as Exhibit "1".

3, Embezzlement for theft by a non-caretaker from an older or dependent adult.  On 6-7-06, Plaintiff pled "Guilty" to Count 3 in exchange for the dismissal of Counts 1 and 2. [See FAC ¶¶ 46,47; Complaint Exb. "1"]. That plea bargain resulted in Plaintiff receiving - 60 days in jail, 3 years probation and a fine of $500. [See Complaint Exb. "1"]. Therefore, Case No. 217842, resulted in a conviction.

The FAC does not allege that any of the information in the Subject Report about Plaintiff's criminal history was inaccurate or incomplete.

The Subject Report also includes Plaintiff's negative credit history consisting of 4 collection accounts with: Medicredit in 2008 for $3,345.00; AT&T West in 2009 for $66.00; Mel Ramstead Metzger Management in 2007 for $298.00; and Bank of The West in 2006 for $302.00. [Complaint Exb. "1"].

Plaintiff alleges that the inclusion of his criminal history in the Subject Report caused his application for housing to be denied resulting in the loss of a housing opportunity (to which Plaintiff does not allege an automatic entitlement) and having to "spend time, money and energy to clean up" TSP's truthful reporting of public records. [FAC ¶¶ 17, 36, 39, 40, 46, 47, 48].

However, after acknowledging that TSP is a consumer reporting agency ("CRA") under the Fair Credit Reporting Act ("FCRA"), and a Consumer Credit Reporting Agency under the Consumer Credit Reporting Agencies Act ("CCRAA") [FAC ¶ 5], the FAC then makes the incorrect legal conclusion that all tenant screening reports under California law containing criminal history information are automatically entirely regulated under the California Investigative Consumer Reporting Agencies Act ("ICRAA") [FAC ¶ 7], and are thus Investigative Consumer Reports ("ICR" singular; "ICRs" plural). [FAC ¶ 7, 24, 25].

The FAC alleges that TSP thereby violated provisions of the FCRA and ICRAA[2], and entitlement to injunctive relief through the Unfair Competition Law ("UCL") under *Bus. & Prof. Code* § 17200 et. seq.

---

[2] Plaintiff appears to be suing TSP under the ICRAA (which does not apply to TSP's tenant screening reports), and not the CCRAA (which does apply to TSP's tenant screening reports) to benefit from the ICRAA's $10,000 statutory penalty provision in lieu of proving damages for any violation of (footnote continued)

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

## A.  THE UCL CLAIM

Working backwards, Plaintiff's 10th and 11th Causes of Action are based on the UCL. The UCL claims fail for three independent reasons. First, the FAC fails to allege that TSP took any money or property *from Plaintiff* that is subject to disgorgement, or that Plaintiff directly gave TSP money or property. Thus, Plaintiff has failed to allege any standing to sue under the UCL [*Bus. & Prof. Code* § 17204]. Secondly, the UCL claims are defective for failure  to allege that Plaintiff has no adequate remedy at law [*Heighly v. J.C. Penney Life Ins. Co.* (C.D. Cal. 2003) 257 F.Supp.2d 1241, 1259-60]. Third, claims for injunctive relief for FCRA violations and related state claims are federally preempted [*Howard v. Blue Ridge Bank* (N.D. Cal. 2005) 371 F.Supp.2d 1139, 1146].

## B.  THE ICRAA CLAIMS

Plaintiff's 4th, 5th, 6th, 7th, 8th, and 9th Causes of Action are predicated on the application of ICRAA to TSP and its tenant screening reports, on the alleged and incorrect assumption that "criminal history reports are regulated under the ICRAA." [FAC ¶ 7].  However, tenant screening reports in California that contain such public court records and that do not otherwise use them to make conclusions about a consumer's character, general reputation, personal characteristics or mode of living are actually Consumer Credit Reports ("CR" singular; "CRs" plural) regulated by CCRAA [See *Civ. Code* § 1785.13(a)(6)].[3]

---

ICRAA [See *Civ. Code* § 1786.50(a)(1)]. CCRAA has no statutory penalty and requires proof of actual damages. [See *Civ. Code* § 1785.31].

[3] Also see *U.D. Registry v. State of California* (2006) 144 Cal.App.4th 405, 410 ("Plaintiff is a credit reporting agency that issues consumer credit reports within the meaning of section 1785.3, subdivisions (c) and (d) of the Consumer Credit Reporting Agencies Act (the act). (§ 1785.2 et seq.) Plaintiff collects credit-related public record information about individuals including unlawful detainer, foreclosure, bankruptcy, and tax lien data. Plaintiff sells consumer credit reports to its members—landowners, property managers, and others. Plaintiff's members consider the reports in deciding whether to lease real property to prospective tenants."); Also see *U.D. Registry, Inc. v. State of California* (1995) 34 Cal.App.4th 107, 109 ("UDR gathers information regarding unlawful detainer cases from municipal and superior court files, and sells that information to subscribers, including the Apartment Association. Both plaintiffs are credit reporting agencies within the meaning of section 1785.13.")

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California  90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

The main difference between a CR controlled by CCRAA and an ICR controlled by ICRAA is that a CR is a report that provides information "bearing on a consumer's credit worthiness, credit standing, or credit capacity, which is used…for the purpose of serving as a factor in establishing the consumer's eligibility for … hiring of a dwelling unit…." [*Civ. Code* § 1785.3(c)], while an ICR is a report "in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through any means." [*Civ. Code* § 1786.2(c)].

Ignoring the distinction between a CR and an ICR, the FAC alleges that the Subject Report is an ICR because the reporting of a consumer's criminal record *automatically* is information about Plaintiff's "general reputation, character, mode of living or other personal characteristics." [FAC ¶¶ 7, 9 ("Criminal history reports are regulated under the ICRAA because they are reports that bear on a consumer's character, general reputation, personal characteristics, or mode of living…")]. That claim is false as a matter of law.

The Subject Report neither says nor infers anything about Plaintiff's "general reputation" (e.g, what people in the community think about Plaintiff), "character" (e.g., Plaintiff's moral fiber), "mode of living" (e.g., how Plaintiff supports himself) or other "personal characteristics" (e.g., Plaintiff's height, hair color, etc.). [See Complaint Exb. "1"]. Therefore, the allegations that the Subject Report is an ICR is directly contradicted by the contents of the Subject Report.

The presence (or absence) of public record information in a tenant screening report does not *automatically* make it a CR or ICR, and that to imply otherwise makes ICRAA void for being unconstitutionally vague. [See *Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 640; *Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604, 615-619].

Public criminal court records, like public unlawful detainer court records, are items of information that may be included in a CR to determine a consumer's credit worthiness or capacity [see *Civ. Code* § 1785.13(a)(6) as well as in an ICR to determine general reputation or character information [*Civ. Code* § 1786.18(a)(7)]. Accordingly, the presence of such information in a tenant screening report, without more, cannot be the determining factor as to whether CCRAA or ICRAA govern the subject tenant screening report. Appellate Courts have determined that ICRAA is unconstitutionally vague on this point and is otherwise void

1   concerning the reporting of such public records. [See *Trujillo v. First American Registry, Inc.*
2   (2007) 157 Cal.App.4th 628, 640; *Ortiz v. Lyon Management Group, Inc.* (2007) 157
3   Cal.App.4th 604, 615-619]. Therefore, ICRAA does not apply to TSP's tenant screening reports
4   as a matter of law.

5       Finally, any prohibition on the reporting of public records in tenant screening reports is
6   unconstitutional. [See *U.D. Registry, Inc. v. State of California* (1995) 34 Cal.App.4th 107, 116,
7   Review Denied 1996 Cal. LEXIS 769 (Cal. Jan. 31, 1996); Cert. Denied 516 U.S. 1074, 116 S.
8   Ct. 777 (1996) (Finding *Civ. Code* § 1785.13(a)(3), which attempted to prohibit the reporting of
9   unlawful detainer cases that did not result in a judgment for the Plaintiff, is unconstitutional); *see
10  also, e.g., U.D. Registry v. State of California* (2006) 144 Cal.App.4th 405 (finding *Civ. Code* §
11  1785.11.2 unconstitutional to the extent it interfered with the reporting of all public court records
12  – including criminal court records); also see *Sorrell v. IMS Health Inc.* (2011) 131 S.Ct. 2653].

13      Plaintiff admits that "The central issue in this litigation are[sic] the various statutory
14  violations relating to the criminal history report on Plaintiff, issued by Defendant TSP." [FAC ¶
15  8]. Thus, all of the claims based on the assumption that ICRAA restricts the reporting of truthful
16  criminal court records are unconstitutional and Plaintiff cannot amend his FAC to state any claim
17  under CCRAA.

    **C.  THE FCRA**

18      Plaintiffs 1st, 2nd, and 3rd, causes of action are premised upon alleged FCRA violations.
19  This motion does not address the 3rd Cause of Action for violation of 15 USC § 1681i because the
20  defenses thereto are based upon facts that do not appear in the FAC.

21      However, the 1st and 2nd Causes of Action are addressed because they fail to state that any
22  violation of FCRA occurred: The reports of the two criminal cases are timely on their face under
23  15 USC § 1681c, and because accuracy of the information reported is not at issue in this case, 15
24  USC § 1681e does not apply.

25      As such, for the reasons stated herein, Plaintiff's 1st, 2nd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, and
26  11th Causes of Action fail as a matter of law.

27
28

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

## 2. PROCEDURAL HISTORY

Plaintiff's original Complaint, filed on February 2, 2012, alleges only two violations of ICRAA and two claims under the UCL [See Complaint]. TSP demurred to the Complaint on the basis that: ICRAA did not apply and that it was unconstitutionally vague; any prohibition upon the truthful reporting of public records is unconstitutional. [*See U.D. Registry, Inc. v. State of California* (1995) 34 Cal.App.4th 107 (declaring *Civ. Code* § 1785.13(a)(3) unconstitutional); also see *U.D. Registry v. State of California* (2006) 144 Cal.App.4th 405 (declaring *Civ. Code* § 1785.11.2 unconstitutional)]. In response, Plaintiff filed the FAC, which added 3 causes of action under FCRA and 4 additional ICRAA causes of action. This case was removed on or about July 5, 2012 because the FAC contains a Federal question as to the FCRA causes of action.

## 3. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) must be granted when the facts as pleaded are not legally sufficient to set forth a claim for relief. [*See National Association for the Advancement of Psychoanalysis v. California Board of Psychology* (9th Cir. 2000) 228 F.3d 1043, 1049]. Dismissal under Rule 12(b)(6) may also be appropriate when a successful affirmative defense or other bar to relief appears on the face of the complaint, such as the absolute immunity of a defendant, claim preclusion, or the statute of limitations. [*See Kansa Reins. Co. v. Congressional Mortgage Corp.* (5th Cir. 1994) 20 F.3d 1362, 1366 (dismissal under *Fed. R. Civ. Proc.* 12(b)(6) may be appropriate when successful affirmative defense appears on face of pleadings); *Goodman v. Praxair, Inc.* (4th Cir. 2007) 494 F.3d 458, 464 (affirmative defense such as statute of limitations may be reached on motion to dismiss under *Fed. R. Civ. Proc.* 12(b)(6))].

Allegations of material fact are accepted as true, but conclusory allegations of fact or law are not. [*Sprewell v. Golden State Warriors* (9th Cir. 2001) 266 F.3d 979, 988].

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

## 4. ARGUMENT

### A. THE FIRST CAUSE OF ACTION FOR VIOLATION OF 15 USC § 1681c(a) FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiff claims that TSP violated 15 USC § 1681c(a)(2) and (5) because the Subject Report contains records of arrest and other adverse information that antedate the date of the report by more than 7 years. [FAC ¶ 57]. However, the Subject Report contains no such records.

15 USC § 1681c(a) states in relevant part:

(a) Information excluded from consumer reports. Except as authorized under subsection (b), no consumer reporting agency may make any consumer report containing any of the following items of information:

(2) Civil suits, civil judgments, and <u>records of arrest</u> that, from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period.

…

(5) Any other adverse item of information, <u>other than records of convictions of crimes</u> which antedates the report by more than seven years.

[15 USC § 1681c(a) (emphasis added)].

The Subject Report contains no records of or other information about any arrests of Plaintiff. The Subject Report *only* contains information derived from two criminal cases filed against Plaintiff, both of which reached a certain disposition. Therefore, 15 USC § 1681c(a)(2) cannot be applicable to this case.

Furthermore, the information in the Subject Report is timely under 15 USC §1681c(a)(5), as the reporting date triggers on both reported cases are within the applicable 7 year time period. The criminal information in Case No. 217842 was timely reported under 15 USC §1681c(a)(5), as it was filed on June 4, 2006 and it was disposed of through a conviction on June 7, 2006. The FAC does not claim that information is false. The Subject Report was issued on February 5, 2010 – about 3 years later. Thus, under both the previous and current versions of 15 USC §1681c(a)(5), all information relating to Case Number 217842 is timely.[4]

---

[4] Prior to 1998, the FCRA restricted the reporting of conviction records older than seven years from the date of disposition, release or parole. However, the amended statute since 1998 permits the reporting of conviction records *indefinitely*. [15 U.S.C. § 1681c(a)(5)].

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

The reporting of Case Number 188935 is also timely under 15 USC §1681c(a)(5). The Subject Report states that, although the criminal case against Plaintiff was filed on May 16, 2000, it was not disposed of by way of Dismissal until March 2, 2004. This means that the Subject Report was made just 6 years from the disposition of said case (i.e., within the 7 year time period).

As to the computation of the reporting of such information, the Federal Trade Commission ("FTC") included this comment on the Fair Credit Reporting Act:

> The seven year reporting period runs <u>from the date of disposition</u>, release or parole, as applicable. For example, <u>if charges are dismissed at or before trial, or the consumer is acquitted, the date of such dismissal or acquittal is the date of disposition.</u>

[16 C.F.R. Pt. 600, App. § 605 (emphasis added)].[5]

Since the FAC confirms that the date of disposition of Case No. 188935 does not antedate the subject report by more than 7 years, said reporting of this case is timely under 15 USC §1681c(a)(5).

Finally, the FAC does not claim that any other adverse information in the Subject Report is untimely. To the contrary, the only information at issue in the FAC is the reported criminal record of Plaintiff. [FAC ¶ 8 ("The central issue in this litigation are the various statutory violations relating to the criminal history report on Plaintiff, issued by Defendant TSP.")].

Thus, the FAC fails under all circumstances to state any cause of action under 15 USC § 1681c and should be dismissed without leave to amend.

**B. THE SECOND CAUSE OF ACTION FOR VIOLATION OF 15 USC § 1681e FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.**

Plaintiff claims that TSP violated 15 USC § 1681e in two specific ways: 1) TSP does not maintain reasonable procedures to avoid violations of 15 USC § 1681c [FAC ¶ 63]; and 2) TSP does not follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. [FAC ¶ 64]. Plaintiff is incorrect as a matter of law on both counts.

---

[5] The Ninth Circuit has previously found the FTC Commentary on the FCRA persuasive authority. [See *Hasbun v. County of L.A.* (9th Cir. Cal. 2003) 323 F.3d 801, 803 ("We think the Federal Trade Commission's (FTC) commentary is persuasive.")].

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

First, 15 USC § 1681e(b)[6] is an accuracy of information statute, not a statute that otherwise controls the type of information that may be included in a consumer report, which is controlled by 15 USC § 1681c.

The FAC does not allege that any of the information is inaccurate or that any information reported is somehow incomplete or misleading. To the contrary, Plaintiff is complaining that the information about his prior criminal history is too complete in that it contains the dismissed charges in said cases along side his convictions. [FAC ¶¶ 36, 38, 45, 47]. The only issue raised by Plaintiff as to the subject criminal information in the FAC is that his criminal records should be considered obsolete – not that any information reported was inaccurate. [FAC ¶¶ 36, 38, 45, 47].

Thus, at the outset, there are no allegations attacking the *accuracy* of the information reported, which Plaintiff concedes is both truthful and complete.  As such, Plaintiff has failed to state a cause of action under 15 USC § 1681e. [*See*, *Guimond v. Trans Union Credit Info. Co.* (9th Cir. Cal. 1995) 45 F.3d 1329, 1333  ("In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report <u>containing inaccurate information</u>."); *see also, Gauci v. Citi Mortgage* (C.D. Cal. Apr. 30, 2012)  2012 U.S. Dist. LEXIS 60153  at *10 ("To establish a prima facie violation under § 1681e(b), a plaintiff must first present evidence demonstrating that a credit reporting agency prepared <u>a report containing inaccurate information</u>."); *see also, Batdorf v. Trans Union* (N.D. Cal. May 8, 2000) 2002 U.S. Dist. LEXIS 9489  at *7].

Furthermore, although the inclusion of obsolete information as delineated in 15 USC § 1681c is not an *accuracy* issue, Plaintiff has failed to identify any obsolete information in the Subject Report. As shown above, all of the information in the Subject Report is timely under 15 USC § 1681c(a)(2) and (5) as set forth by the FTC. Thus, even if the inclusion of truthful and complete obsolete information in a consumer report could be considered an inaccuracy (which it

---

[6] 15 USC § 1681e(b) states: "Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California  90024
Tel. 310.446.9900 • Fax 310.446.9909

1  is not), the FAC fails to allege that any such information was so included in the report at issue in
2  this case.

3      Plaintiff attempts to try and parse out certain pieces of information from each case in
4  order to make parts of each case appear obsolete. However, failing to include all of the
5  information in a case that is timely reported, including the dismissal of certain causes of action as
6  part of a plea deal, would otherwise itself be violation of 15 USC § 1681e(b) by reporting
7  "incomplete" information about a case.  Plaintiff's efforts in this regard to create a cause of
8  action where none exists requires an absurd application of the FCRA and should be ignored.

9      Therefore, as Plaintiff has failed to allege any inaccuracy in the Subject Report under any
10  circumstance, the Second Cause of Action fails to state a claim and should be dismissed without
11  leave to amend as a matter of law.

## C.  THE FOURTH CAUSE OF ACTION FOR VIOLATION OF CIV. CODE § 1786.18 FAILS TO STATE ANY CLAIM FOR WHICH RELIEF CAN BE GRANTED.

The 4th Cause of Action is based upon the allegation that TSP issued a report containing
records of arrest that did not result in a conviction and other adverse information that antedate the
date of the report by more than 7 years in violation of *Civ. Code* § 1786.18(a)(7) and (8).  For the
following reasons, this cause of action, and all other ICRAA claims, fail as a matter of law.

First, by issuing reports containing public records for tenant screening purposes, TSP is a
consumer credit reporting agency under *Civ. Code* § 1785.3(d), not an investigative consumer
reporting agency under 1786.2(d). It seeks only to report relevant public record information in its
tenant screening reports that bears on a consumer's credit capacity, credit worthiness, and credit
standing for the purposes of hiring a dwelling unit. The inclusion of criminal records in a CR is
expressly authorized by the California Legislature to assist in the evaluation of a consumer's
credit capacity, credit standing or credit worthiness for the hiring of a dwelling unit. [See *Civ.
Code* § 1785.13]. Thus, contrary to the false allegation of law in the FAC that criminal history
reports are *only* regulated under ICRAA [FAC ¶ 7], the law is clear that the Legislature has
mandated that criminal history information also serves as a factor in determining a consumer's

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California  90024
Tel. 310.446.9900 • Fax 310.446.9909

credit capacity, credit standing or credit worthiness and are thus equally regulated under CCRAA as well.

The FAC does not allege that TSP intended to sell an ICR, or that its client intended to receive an ICR, or that any court has ever found any of its reports to be an ICR. To the contrary, the FAC alleges that TSP intentionally did not include any of the required notices for an ICR (notices which are not required for a CR) [See FAC ¶ 98], and the report on its face complies with the reporting requirements of CCRAA.  [See Exb. "1"]. For this reason alone, the FAC fails to plead a proper cause of action under ICRAA.

Second, Plaintiff concedes that the Subject Report is not an investigative consumer report under the FCRA, but rather a consumer report. [FAC ¶ 23]. Nonetheless, Plaintiff claims that the Subject Report is an ICR rather than a consumer report under the FCRA as. However, the ICRAA does not and cannot apply to the facts alleged in this case.

### 1)  THE HISTORY OF CCRAA AND ICRAA

In 1975, California enacted a dual statutory scheme for the regulation of the consumer reporting industry in this State. "[W]hen California enacted its own version of the [federal] act in 1975, it drew a distinction between 'consumer credit reporting agencies' and 'investigative consumer reporting agencies.' The former were covered by CCRAA, the latter under ICRA[A]." [*Cisneros v. The U.D. Registry, Inc.* (1995) 39 Cal.App.4th 548, 559].

Because the California Legislature divided the regulation of consumer reporting agencies into CCRAA and ICRAA, the federal definition of consumer report was similarly divided. [Compare *Civ. Code*, § 1785.3(c) & *Civ. Code* § 1786.2(c) with 15 USC § 1681a(d)]. CCRAA governed "consumer credit reports," defined as "any written, oral, or other communication of any information by a consumer credit reporting agency bearing on a consumer's credit worthiness, credit standing, or credit capacity . . ."  [*Civ. Code,* former § 1785.3(c)]. ICRAA by comparison, governed "investigative consumer reports," which, until 1999, were defined as "a consumer report in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained <u>through personal interviews</u> with neighbors, friends, or associates of the consumer reported on, or others with whom he or she is acquainted or who

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California  90024
Tel. 310.446.9900 • Fax 310.446.9909

may have knowledge concerning any of these items of information." [*Civ. Code*, former § 1786.2(c)].

In order to effectuate the distinction between the two statutory schemes, the definition of a consumer credit report *expressly excludes* ICRs. A "consumer credit report" under CCRAA does not include "any report containing information *solely* on a consumer's character, general reputation, personal characteristics, or mode of living which is obtained through personal interviews with neighbors, friends or associates of the consumer reported on, or others with whom he is acquainted or who may have knowledge concerning those items of information." [*Civ. Code* § 1785.3(c)]. Likewise, an ICR "does not include a consumer report or other compilation of information which is limited to specific factual information relating to a consumer's credit record or manner of obtaining credit obtained directly from a creditor of the consumer or from a consumer reporting agency when that information was obtained directly from a potential or existing creditor of the consumer or from the consumer." [*Civ. Code* § 1786.2(c)].

CCRAA, at its inception, applied to consumer credit reports used to determine eligibility for credit for personal, family or household purposes, or employment purposes, insurance, licensing and other legitimate purposes. [*Civ. Code* § 1785.3(c), *Civ. Code* §1785.11]. ICRAA, in turn, applied to applications for employment purposes and for insurance for personal, family or household purposes. [*Civ. Code* § 1786.2(b)].

In addition, both CCRAA and ICRAA expressly authorize the reporting of unlawful detainer actions and public criminal court records. [see *Civ. Code* § 1785.13(a)(3) & (6); also see *Civ. Code* § 1786.18(a)(4) & (7)].[7]

In 1982, the Legislature added "hiring of a dwelling unit" to both CCRAA and ICRAA, thereby regulating the use of consumer credit reports and investigative consumer reports to

---

[7] In 1995, the California Court of Appeal declared *Civ. Code* § 1785.13(a)(3) unconstitutional to the extent it limited the information obtained from court records that a consumer reporting agency may report regarding a tenant's involvement in an unlawful detainer action. [*U.D. Registry, Inc. v. State of California* (1995) 34 Cal.App.4th 107, 116, Review Denied 1996 Cal. LEXIS 769 (Cal. Jan. 31, 1996); Cert. Denied 516 U.S. 1074, 116 S. Ct. 777 (1996)]. Under the Court's reasoning therein, any limitation or prohibition on the reporting of any public court records is likewise unconstitutional. [See for example *U.D. Registry v. State of California* (2006) 144 Cal.App.4th 405].

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

determine a prospective tenant's eligibility for rental housing (i.e., tenant screening reports). [*Civ. Code* §§ 1785.1(d); 1785.3(a)(3); 1785.3(c)(3); 1785.11(a)(3)(E); 1786(a); 1786(f); 1786.2(b); and 1786.12(d)(5)].

The 1982 amendments maintained the clear distinction between CRs and ICRs by contemplating and providing for the possible use of both reports in connection with a prospective tenant's eligibility for rental housing:

> [SB 1406] would include within the term 'consumer credit report' any communication of any information by a consumer credit reporting agency bearing on a consumer's credit worthiness, credit standing, or credit capacity which is used or expected to be used, or collected in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for the hiring of a dwelling unit, for purposes of the Consumer Credit Reporting Agencies Act; and would include the hiring of a dwelling unit as an activity which would cause a person who meets other specified criteria to be a 'consumer' or an 'investigative consumer reporting agency' for purposes of the Investigative Consumer Reporting Agencies Act.

[Legislative Counsel's Digest of Senate Bill 1406 (1981-1982 Reg. Sess.) as introduced on February 1, 1982]. Thus, since the enactment of CCRAA and ICRAA, the Legislature has maintained the distinction between consumer CRs and ICRs and expressly recognized that reports on unlawful detainer actions and criminal court cases, or information derived therefrom, might be included in both kinds of reports, but are otherwise not the defining factor. Rather, it is the nature and subject matter of the report, not simply the inclusion of information of unlawful detainer actions or criminal court records that is determinative of its classification. Each classification is then subject to its own set of regulatory provisions.

The distinction between the two types of reports took center stage in a 1995 decision of the Court of Appeal. There, the court addressed whether "[the] practice of soliciting written comments from its subscriber landlords concerning tenants' treatment of rental premises, then passing that information on to other subscribers, brings it under ICRA[A]." [*Cisneros*, 39 Cal.App.4th at 567]. The Court of Appeal noted that "[t]he issue is significant because ICRA[A] imposes stricter notice and verification requirements than CCRAA." [*Id.*] The Court of Appeal in *Cisneros* concluded that the reports the tenant screening agency assembled and disseminated were not "investigative consumer reports" because the information it received from the landlords was not obtained through "personal interviews." [*Cisneros*, 39 Cal.App.4th at 569]. The appellate court reasoned that the landlords obtained the information through personal observation of the

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

premises and petitioner obtained the information by means of written responses to forms, not personal interviews. [*Id.*].

However, in 1998, the Legislature deleted the "personal interview" requirement for ICRs and revised *Civ. Code* § 1786.2(c) to permit an ICR to include information on character, general reputation, personal characteristics, or mode of living obtained through "any means." [*Civ. Code* § 1786.2(c)].[8] The purpose of the amendment was to broaden the means by which reputation and character information included in an ICR might be obtained, not to change the nature or use of public records in a CR or ICR.

### 2) THE SUBJECT REPORT ATTACHED TO THE ORIGINAL COMPLAINT IS NOT AN ICR AS A MATTER OF LAW.

As stated above, the distinguishing factor between a CR controlled by CCRAA and an ICR controlled by ICRAA is that a CR is a report that provides information "bearing on a consumer's credit worthiness, credit standing, or credit capacity, which is used…for the purpose of serving as a factor in establishing the consumer's eligibility for … hiring of a dwelling unit…." [*Civ. Code* § 1785.3(c)]. In contrast, an ICR is a report "in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through any means." [*Civ. Code* § 1786.2(c)]. CRs and ICRs are supposed to be mutually exclusive [See *Civ. Code* § 1785.3(c); *Civ. Code* § 1786.2(c); See *Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604, 614-615 ("any one item of information may be classified as either creditworthiness or character information, but not both.")].

Here, the Subject Report says nothing about Plaintiff's "general reputation" (e.g, what people in the community think about Plaintiff), "character" (e.g., Plaintiff's moral fiber), "mode of living" (e.g., how Plaintiff supports himself) or other "personal characteristics" (e.g., Plaintiff's height, hair color, etc.). [Complaint Exb. "1"]. Therefore, the subject tenant screening report is not an ICR and ICRAA has no application to this case. Any other finding would make ICRAA unconstitutionally vague and unenforceable as discussed below.

---

[8] The Legislature failed to similarly amend the *Civil Code* § 1785.3(c) exclusion of investigative consumer reports from the definition of consumer credit reports.

a.  **The Mere Presence Of Public Criminal And Civil Court Records Does Not Make A Tenant Screening Report An ICR, Or Else ICRAA Becomes Unconstitutionally Vague As A Matter of Law.**

Public criminal court records, like public unlawful detainer court records, are items of information that may be included in a CR to determine a consumer's credit worthiness or capacity [see *Civ. Code* § 1785.13] as well as in an ICR to determine general reputation or character information [*Civ. Code* § 1786.18]. Accordingly, the mere presence of such information in a tenant screening report (or lack thereof), without more, cannot be the determining factor as to whether CCRAA or ICRAA govern the subject tenant screening report.[9] However, if this Court should find that public court records are inherently character/general reputation information, TSP cannot be liable under ICRAA for the inclusion of that information in the Subject Report as application of ICRAA in that context is unconstitutionally vague and otherwise void.

"[T]he ICRAA is unconstitutionally vague as applied to tenant screening reports containing unlawful detainer information. The statute governs reports containing "information on a consumer's character, general reputation, personal characteristics, or mode of living … obtained through any means." (§ 1786.2, subd. (c).) Plaintiffs asserts their tenant screening reports are subject to the ICRAA because they indicated unlawful detainer actions had been filed against them, and thus contained "character information."

As we explain in a companion case, the ICRAA is unconstitutionally vague <u>because persons of reasonable intelligence cannot determine whether unlawful detainer information is character information subject to the ICRAA or creditworthiness information subject to the CCRAA.</u> (*Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604 (*Ortiz*).) The Legislature intended to differentiate between character information and creditworthiness information, but ever since a 1998 ICRAA amendment, <u>it is hopelessly uncertain on which side of the fence unlawful detainer information falls</u>. (*Id.* at pp. 615–619.) Accordingly, defendant is entitled to summary adjudication on the ICRAA claims."

[*Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 640 (footnote omitted).

*See also, Ortiz v. Lyon Management Group, Inc. (2007) 157 Cal.App.4th 604, 615-619*].

---

[9]  The reporting of the absence of unlawful detainer cases or criminal court cases, likewise says nothing about a person's character or general reputation.  Yet reporting the absence of information is still information being reported. [See *Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604, 612 fn.3]. However, it is axiomatic that there are bad people who have never been a defendant in an eviction case or criminal matter, as there are good people that have been a defendant in such cases due to hard times or poor choices as an adolescent. Thus to assume the mere reporting of such information is automatically one or the other is folly.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California  90024
Tel. 310.446.9900 • Fax 310.446.9909

With regard to unlawful detainer information, which is inherently derogatory, the Court in *Ortiz* found that such could arguably be classified as information on creditworthiness or character. [*Id.* at 617-619]. Despite this overlap, the Court found that prior to the 1998 amendment, the distinction between a CR and an ICR was still clear because of the personal interview component. [*Id.* at 616]. However, when the legislature removed the personal interview component, it made ICRAA unconstitutionally vague [*Id.* at 617].

> This statutory scheme—two separate statutes governing two kinds of tenant screening reports depending on the type of information they contain—indicates a legislative intent to distinguish between creditworthiness information and character information. (See *Dyna-Med*, *supra*, 43 Cal.3d at pp. 1386–1387 [statutes must be harmonized].) Nothing in the statutes suggests any *one* item of information may constitute *both* creditworthiness and character information such that it alone subjects a tenant screening report to *both* statutes. Rather, any one item of information may be classified as either creditworthiness or character information, *but not both.* Construing the two statutes to govern discrete items of information harmonizes the statutes, rather than collapsing them into one. (*Ibid.*)

> While the statutes require a distinction between creditworthiness and character information, the line between the two is not readily apparent. On the one hand, a consumer's creditworthiness *itself* pertains to the consumer's character or personal characteristics. Creditworthiness is a personal attribute, the quality of being "financially sound enough that a lender will extend credit in the belief that the chances of default are slight; fiscally healthy." (Black's Law Dict. (7th ed. 1999) p. 377, col. 1.) Creditworthiness information is a *type* of character information. On the other hand, certain types of character information may also constitute creditworthiness information. Information that a consumer has the character traits or personal characteristics of (or a general reputation for) dishonesty, profligacy, carelessness, or absentmindedness would reasonably relate to the consumer's financial soundness, likelihood of default, or fiscal health. At least these types of character information pertain to the consumer's creditworthiness.

[*Id.* at 614-615 (italics in original)].  The *Ortiz* Court concluded:

> Our challenge arises not because unlawful detainer information is somehow paradoxical, but because the statutory scheme fails to set forth truly distinct categories. It presents a false dichotomy between creditworthiness and character. The ICRAA's nebulous reference to character information, as applied to tenant screening reports containing unlawful detainer information, is unconstitutionally vague.

[*Id.* at 612-613].

> We are left with no rational basis to determine whether unlawful detainer information constitutes creditworthiness information subject to the CCRAA or character information subject to the ICRAA. We doubt any "person of ordinary intelligence" can do so either. (*Cranston*, *supra*, 40 Cal.3d at p. 763.) Rather, credit reporting agencies and landlords "must necessarily guess at [the ICRAA's] meaning and differ as to its application." (*Connally*, *supra*, 269 U.S. at p. 391.) Worse, landlords must make their guesses when they request tenant screening reports, *before* they learn whether the report will contain any unlawful detainer information or exactly what kind of unlawful detainer

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

information it will include. (See § 1786.16 [listing conditions that must be met *before* procuring investigative consumer reports].)

The ICRAA thus fails to provide adequate notice to persons who compile or request tenant screening reports that may contain unlawful detainer information. (*Gallo, supra*, 14 Cal.4th at p. 1115 [noting "the core due process requirement of adequate *notice*"]; *Lockheed*, *supra*, 28 Cal.2d at p. 484 ["A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions …"].) The 1998 amendment rendered the ICRAA unconstitutional as applied to tenant screening reports containing unlawful detainer information. Accordingly, the court correctly granted summary judgment to defendant.

[*Id.* at 619 (italics in original)].

Here, criminal court records fair no better than unlawful detainer information as to creating a distinction between credit capacity and worthiness information and personal character information. The legislature has already deemed criminal record information to be information on a consumer's credit worthiness or capacity [see *Civ. Code* § 1785.13(a)(6)].  Therefore, criminal information *does* have a bearing on a consumer's credit worthiness or capacity and is therefore beyond contestation. Further, allowing criminal record information to be used in determining a consumer's credit capacity and worthiness makes sense, as criminal records can be used to establish a person's credit capacity (e.g., the ability to get a job, the payment of criminal fines, the lack of a criminal history, etc.). Although criminal records, like unlawful detainer records, may also imply something about the person's character (e.g., dishonest, untrustworthy, etc.), it does not always do so. One would not know until after the requested report came back, which very well may fail to contain any such information. However, it is for this reason that the Court in *Ortiz* found ICRAA to be unconstitutionally vague.

Therefore, for the same reason that the reporting of unlawful detainer court information (or lack thereof) cannot be found to constitute an ICR, criminal court information (or the lack thereof) likewise cannot alone invoke ICRAA. As such, Plaintiff has failed to state a claim in the FAC against TSP under ICRAA in the 4th through 9th causes of action because the application of ICRAA over the Subject Report to CCRAA's exclusion is constitutionally uncertain, and is therefore unconstitutionally vague in its application to this case.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

**3)  THE APPLICATION OF ICRAA AND CCRAA STATUTES TO RESTRICT THE REPORTING OF TRUTHFUL PUBLIC RECORD INFORMATION IS INHERENTLY UNCONSTITUTIONAL AND CANNOT BE THE BASIS OF A VIOLATION OF ICRAA OR AN AMENDED CCRAA CLAIM.**

In addition to the restrictions of reporting public records in the currently untested ICRAA sections purporting to do so [See *Civ. Code* § 1786.18(a)(1)-(8)], Plaintiff may try to argue that the reporting of a criminal court case that was ultimately dismissed also constitutes a violation of CCRAA [See *Civ. Code* § 1785.13(a)(6)], and as such, Plaintiff should be given leave to amend to allege a CCRAA claim. This anticipated argument fails because any limitation on the reporting of any truthful information derived from court records is unconstitutional.

In1995, the California Court of Appeal declared *Civ. Code* § 1785.13(a)(3) unconstitutional to the extent it limited the information obtained from court records that a consumer reporting agency may report regarding a tenant's involvement in an unlawful detainer action:

> Concern about the availability of rental housing for those needing housing, and particularly those facing eviction, is a valid and significant state interest. But <u>it does not justify a ban on publication by credit reporting agencies of lawfully obtained truthful information contained in court records open to the perusal of everyone.</u> The information is in the custody of the state. If the state is concerned about dissemination of this information, it has the power to control its initial release. As explained in *Florida Star*, *supra*, the government may classify the information, establish procedures for its redacted release, and extend a damages remedy against the government if the government's mishandling of sensitive information leads to its dissemination. <u>"Where information is entrusted to the government, a less drastic means than punishing truthful publication *almost always exists* for guarding against the dissemination of private facts."</u> (491 U.S. at p. 534 [105 L. Ed. 2d at pp. 455-456].)
>
> Section 1785.13, subdivision (a)(3) contains the same flaw found in the *Daily Mail* and *Florida Star* cases--<u>the restriction against dissemination is limited to one type of publication, thereby failing to achieve its purpose of protecting the subject from other modes of broadcast of the same information.</u> In *Daily Mail*, the restriction applied only to newspapers; in *Florida Star*, it applied only to "any instrument of mass communication"; in our case, the restriction applies only to consumer credit reporting agencies. In all three instances, <u>the information can be disseminated in countless other ways.</u> <u>No justification is advanced for limiting one form of dissemination while permitting broadcast of the same information by other methods.</u>

[*U.D. Registry, Inc. v. State of California* (1995) 34 Cal.App.4th 107, 114 -115].

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

As suggested by several of the opinions we have discussed, there are any number of things the state may lawfully do to protect renters who are subject to or who have suffered an eviction. What it cannot do is to act in violation of the Constitution. That is the effect of section 1785.13, subdivision (a)(3), the statute before us. We conclude it violates the First Amendment, and therefore is unconstitutional. The trial court was right to so declare.

[*Id.* at 116].

Likewise, in *U.D. Registry v. State of California* (2006) 144 Cal.App.4th 405, the Appellate Court found that any prohibition or curtailment in CCRAA (and specifically *Civ. Code* § 1785.11.2 that prohibited the reporting of any information, including public court record information such as criminal reports) that in anyway interfered with the truthful reporting of public court records by a tenant screening company *in any manner* was inherently unconstitutional, especially since public court records are readily available to all members of the public through a multitude of other sources.

We conclude that section 1785.11.2 is unconstitutional as applied to plaintiff who, the agreed facts prove, provides credit reports drawn in material part from public records including court documents.

[*Id.* at 410 (emphasis added)].

Defendants do not dispute that section 1785.11.2 prevents plaintiff from disseminating information about unlawful detainer, bankruptcy, tax lien, foreclosure, and other public proceedings against individuals; all of it secured from public records. The bulk of the sources of records referred to on plaintiff's Web site are publicly produced documents. Nor do defendants dispute the public nature of that information; it is available to members of the public without resort to plaintiff's reports. Moreover, preventing plaintiff from disseminating *all* of the public record information does not serve the asserted state interest. The knowledge that an individual has been the subject of an unlawful detainer action by a lessor, a tax lien imposed by the government, or a foreclosure action by a lender does not facilitate identity theft. Even if that information could be of some use to a potential identity thief, it would be available without resort to plaintiff's credit reports.

[*Id.* at 424-425 (emphasis added)].

As held by both *U.D. Registry* cases, there can be no compelling state interest in suppressing the truthful reporting by tenant screening companies of any information derived from public court records. Thus, courts have consistently held that ICRAA or CCRAA may not be applied to curtail a tenant screening company's reporting of public court records available to the public through a multitude of other sources (e.g., criminal court case information), such restrictions are unconstitutional as a matter of law.

Consistent with the foregoing, the Supreme Court decided *Sorrell v. IMS Health Inc*. (2011) 131 S.Ct. 2653, a landmark First Amendment decision that redefined the constitutional protection for disclosure of truthful commercial information.

In *Sorrell*, the State of Vermont enacted a statute prohibiting pharmacies and data brokers from selling doctors' prescription information to drug companies, and prohibited drug companies from using that information to market their drugs. The Supreme Court invalidated the statute on First Amendment grounds, holding that its content-based, speaker-based restrictions on truthful commercial speech did not survive "heightened" constitutional scrutiny. *Sorrell* marks a substantial shift in the protection afforded to commercial speech. Under *Sorrell*, many existing laws limiting disclosure of truthful commercial information are now unconstitutional. Although the speech at issue here is not commercial speech as indicated by the two *U.D. Registry* cases cited above, the fact that commercial speech was at issue in *Sorrell* is most instructive in this case, as commercial speech receives less constitutional protection.

Sections 1786.18(a)(7) and 1785.13(a)(6) fall squarely within *Sorrell*'s holding. Conveying truthful information about an individual's criminal record is a form of protected speech. [*Sorrell*, 131 S. Ct. at 2667]. Moreover, Sections 1786.18(a)(7) and 1785.13(a)(6) are content-based and speaker-based restrictions on that speech. The statute targets a particular type of information—arrest and adverse records that are more than seven years old—and therefore is content-based. [Ci*v. Code* §§ 1786.18(a)(7) and 1785.13(a)(6)].

Sections 1786.18(a)(7) and 1785.13(a)(6) are also speaker-based. Like the Vermont statute in *Sorrell*, which applied only to drug marketers, the restrictions in Sections 1786.18(a)(7) apply only to investigative consumer reporting agencies and the restrictions in 1785.13(a)(6) only apply to CRAs. Government agencies, publicly-accessible online databases, news organizations, and countless other services provide access to the same information but are not subject to Sections 1786.18(a)(7) and 1785.13(a)(6). The statutes thus "disfavors specific speakers" and is a "speaker-based" restriction. [*Sorrell*, 131 S. Ct. at 2663].

Thus, *Civ. Code* § 1786.18(a)(7) and (8) are unconstitutional as applied to the reporting of truthful public criminal court information. Further, Plaintiff cannot amend his complaint to add CCRAA causes of action for the same violation because *Civ. Code* § 1785.13(a)(6) is

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

unconstitutional for the same reasons stated in *Sorrell* and for the same reasons *Civ. Code* § 1785.13(a)(3) has already been declared unconstitutional in *U.D. Registry, Inc. v. State of California* (1995) 34 Cal.App.4th 107.

Therefore, as Plaintiff's Fourth Cause of Action is entirely based on the unconstitutional application of statutes to prohibit the reporting of certain public court case information, and as any potential amendment to the Complaint would likewise seek an unconstitutional restriction on the reporting of public court case information, Plaintiff cannot amend his FAC to state a cause of action.

### D. PLAINTIFF'S FIFTH THROUGH NINTH CAUSES OF ACTION FAIL TO STATE ANY CLAIM FOR WHICH RELIEF CAN BE GRANTED, AS ICRAA DOES NOT APPLY TO TSP'S TENANT SCREENING REPORTS CONTAINING PUBLIC COURT RECORDS CONTAINING CRIMINAL INFORMATION.

Plaintiff's 5th through 9th Causes of Action allege violations of different reporting and investigating requirements as mandated by ICRAA. [See FAC ¶¶ 78-99]. It is axiomatic that if ICRAA does not apply to TSP's tenant screening report because it is void for being unconstitutionally vague, then such causes of action for violation of ICRAA likewise fail.

ICRAA does not apply to the Subject Report just because it contains criminal record information. To the extent that ICRAA may apply, it is unconstitutionally vague and thus unenforceable in this case.

Thus, because ICRAA has no application to this case under any circumstance, the 5th through 9th causes of action should be dismissed without leave to amend.

### E. THE FAC FAILS TO PROPERLY ALLEGE A CLAIM UNDER *BUS. & PROFS. CODE* § 17200 et. seq.

#### 1) PLAINTIFF HAS NO STANDING TO BRING A UCL CLAIM.

Plaintiff has no standing to bring a UCL claim against TSP because Plaintiff has failed to allege that TSP took money or property from Plaintiff that would otherwise be subject to disgorgement or restitution.

"Section 17204 of the UCL governs a plaintiff's standing to assert a UCL claim. [*Bus. & Prof. Code* §§ 17203, 17204]. Prior to the enactment of Proposition 64 in November 2004, the UCL "did not predicate standing 'on a showing of injury or damage'" and was thus "subject to

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

abuse by attorneys who used it as the basis for legal '"shakedown"' schemes" and frivolous lawsuits. [*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 812; see *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228]. To address this problem, Proposition 64 amended section 17204 to accord standing only to certain specified public officials and to any person who '"has suffered injury in fact and has lost money or property as a result of such unfair competition.'" [*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1590; also see *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 32; also see *Forsythe v. Wells Fargo Bank, N.A.* (2012, CD Cal) 2012 US Dist LEXIS 44031 at *12.

The FAC fails to allege an injury in fact to including  any loss of money or property to TSP.

Standing under section 17200 requires allegations of a "distinct and palpable injury" suffered '"as a result of the defendant's actions'" and '"an invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) actual or imminent, not 'conjectural' or 'hypothetical,' [citations].'" [*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 814; *Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1591-1592]. The mere violation of a law does not automatically give rise to a cause of action under section 17200. [*Medina v. Safe-Guard Products, Int'l., Inc.* (2008) 164 Cal.App.4th 105; *Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583].

Further, a private plaintiff must also show a causal connection between the alleged wrongful conduct and the actual injury sustained. [*Bus. & Prof. Code* § 17204; *Hall v. Time Inc.* (2008) 158 Cal.App.4th 847, 855]. If the cause of action is based on an unlawful business practice, plaintiff cannot predicate standing to sue on an injury caused by lawful conduct of the defendant that is somehow connected to defendant's unlawful conduct, if that unlawful conduct does not itself cause actionable injury to plaintiff. [*Daro v. Superior Court* (2007) 151 Cal.App.4th 1079, 1099].

In *Citizens of Humanity, LLC v. Costco Wholesale Corp.* (2009) 171 Cal.App.4th 1, plaintiff Citizens attempted to bring a cause of action against Costco for selling its premium denim when Citizens had not approved Costco as an appropriate retailer for its products. Citizens

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1   claimed harm to its goodwill as its damages. The court in *Citizens* summed up the "lost money or

2   property" based on reputation damages as follows:

> The question arises whether an individual who has not lost "money or property" of
> the type that would be subject to a restitution order under Business and Professions
> Code section 17203 could still have "lost money or property" of the type that would
> confer standing under Business and Professions Code section 17204. Stated more
> concretely, Citizens alleges harm to its goodwill, which would not entitle Citizens to
> restitution. [Citations.] <u>Is the alleged harm to its goodwill nonetheless a loss of
> "money or property as a result of the unfair competition" sufficient to confer standing
> on Citizens, so that Citizens may pursue solely an injunctive remedy</u>?

> <u>It is not</u>. "<u>Because remedies for individuals under the [unfair competition law] are
> restricted to injunctive relief and restitution, the import of the [Business and
> Professions Code section 17204 loss of money or property] requirement is to limit
> standing to individuals who suffer losses of money or property *that are eligible for
> restitution*</u>." (Buckland v. Threshold Enterprises, Ltd., supra, 155 Cal.App.4th at p.
> 817; see Walker v. USAA Cas. Ins. Co. (E.D. Cal. 2007) 474 F.Supp.2d 1168, 1172.)
> As Citizens could not allege having suffered losses which would entitle it to
> restitution, it has no standing to pursue a cause of action for unfair competition.

[*Citizens of Humanity, LLC v. Costco Wholesale Corp*. (2009) 171 Cal.App.4th 1, 22-23].

15      Here, Plaintiff's only allegation regarding his damages is that "As a result of Defendant

16   TSP's wrongful acts and omissions, Plaintiff has been injured, including, without limitation, by

17   virtue of having lost housing opportunities and by having been forced to spend time, money and

18   energy to clean up after Defendant's errors." [FAC ¶ 17].  But none of this is the loss of "money

19   or property" to TSP as is needed to have standing. As such, Plaintiff has no standing to bring a

20   UCL claim because he has lost no money or property to TSP.

21      **2)   NO UCL CLAIM EXISTS WHEN CLAIMANTS HAVE AN ADEQUATE
             REMEDY AT LAW.**

22      "A UCL action is an equitable action . . . It is not an all-purpose substitute for tort or

23   contract causes of action, Damages are not available under section 17203." [*Cortez v. Purolator

24   Air Filtration Products Co*. (2000) 23 Cal.4th 163, 173]. Where the plaintiff has an adequate

25   remedy at law, UCL relief is not proper. [*Provincial Horne Mortgage Co. v, Superior Court*

26   (1998)  66 Cal.App.4th 1236, 1249-50;  *Heighly v. J.C. Penney Life Ins. Co*. (C.D. Cal. 2003)

27   257 F.Supp.2d 1241, 1259-60  (Plaintiff's complaint is fatally defective because it failed to allege

28   that he had no adequate remedy at law)].

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California  90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

The FAC does not allege that Plaintiff lacks an adequate remedy at law.  To the contrary, each cause of action is tied to a statute and a statutory remedy. For this reason alone, the UCL claims must be dismissed.

If this motion is granted, only the 3rd Cause of Action for violation of 15 USC § 1681i for failing to respond to an alleged dispute letter sent by someone other than the consumer will remain. [See FAC ¶ 49].  Plaintiff has an adequate remedy at law under 15 USC § 1681n and 15 USC § 1681o, both of which provide for actual damages, attorneys' fees and potential statutory damages.

### 3)  PLAINTIFF'S UCL CLAIMS ARE PREEMPTED FOR FCRA VIOLATIONS.

The FAC alleges the FCRA statutory violations, and the corresponding ICRAA statutory violations that mirror the FCRA claims, as UCL predicates [See FAC ¶¶ 100, 103, 107, 109, 110, 111] for which Plaintiff seeks injunctive relief. [See FAC ¶¶ 106,112]. However, such UCL claims seeking injunctive relief for FCRA violations, and state statutes parroting FCRA violations, are federally preempted.

The FCRA does not provide private consumers with a private right of action for injunctive relief [*see* 15 USC §§ 1681n & 1681o], but reserves that right solely for government entities. Therefore, no state may pass or enforce any law bestowing upon a consumer the right to obtain injunctive relief against anyone for violating FCRA, or a similar subservient state statute (i.e. ICRAA or UCL), as to do so would place the state law in direct conflict with Congress' scheme under FCRA to reserve that right solely for the government. This includes claims under *Bus. & Prof. Code* § 17200 for injunctive relief for violations of state laws that are otherwise subservient to FCRA (i.e. ICRAA, CCRAA, UCL, etc.). Case law throughout the United States, including California's Federal Courts, are in accord with this maxim. [See *Washington v. Credit Services, Inc.* (5th Cir. 2000) 199 F.3d 263, 268 ("We hold that the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC."); *Howard v. Blue Ridge Bank* (N.D. Cal. 2005) 371 F.Supp.2d 1139, 1146 ("Because the Court

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

finds that plaintiff's § 17200 claim is preempted by the FCRA, he cannot obtain an injunction for this claim."); *Hogan v. PMI Mortg. Ins. Co.,* (N.D. Cal. May 12, 2006) 2006 U.S. Dist. LEXIS 32179 at *35-*36 ("injunctive relief, is preempted by the FCRA.")].

The list of cases across the Country declaring that no consumer may sue for injunctive relief for violations of such state statutes for FCRA violations (and its subservient state counterparts) is nearly endless, even under state statutes that allow for injunctive relief.[10] Regardless, it is with certainty that Plaintiff's attempt to seek injunctive relief here is preempted. Thus, Plaintiff cannot succeed on his UCL claims as a matter of law under any circumstance.

## 5. CONCLUSION

Based on the foregoing, the 1st, 2nd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, and 11th causes of action of the FAC fail to state a claim upon which relief can be granted and this motion should be granted without leave to amend.

Dated: July 16, 2012                    **Jacobson, Russell, Saltz & Fingerman LLP**

_____/S/_____
Michael J. Saltz, Esq.,
Attorneys for Defendant The Screening Pros, LLC

---

[10] For example, also see *White v. First Am. Registry, Inc.,* (S.D.N.Y. 2005) 378 F.Supp.2d 419, 424 *Jarrett v. Bank of America, et. al.* (D. Kan. 2006) 421 F. Supp.2d 1350, 1353-55; *Bittick v. Experian Information Solutions, Inc.* (N.D. Tx. 2006) 419 F.Supp.2d 717; *Poulson v. Trans Union, LLC* (E.D. Tx. 2005) 370 F.Supp.2d 592, 593.